IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

ANDRE GINNANE,

Plaintiff,

v. C.A. No.: 5:23-CV-341

BOYS & GIRLS CLUB OF
SAN ANTONIO, INC.,

Defendant.

_____________________________________/

**PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S AMENDED COUNTERCLAIM**

Plaintiff, Andre Ginnane ("Ginnane"), moves to dismiss the counterclaim asserted by Defendant, Boys & Girls Club of San Antonio, Inc. ("BGCSA") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I. INTRODUCTION

1. BGCSA hired Plaintiff on April 19, 2021 as its Chief Executive Officer at a rate of $195,000 per year plus a $32,500 signing bonus. BGCSA fired Ginnane less than ninety days after she began working. BGCSA's counterclaim seeks recovery of the Signing Bonus based upon the parties' employment agreement ("Agreement").

2. On August 1, 2023, Ginnane filed a motion to dismiss Defendant's counterclaim because the contractual provision it seeks to enforce is considered a

restraint of trade in violation of Texas law, and is, therefore, unenforceable. (Docket #17).

3. In lieu of filing a response, Defendant amended its counterclaim. Defendant's amendments from the original counterclaim primarily adds an allegation that Plaintiff sells books on Amazon and the unknown and unspecified income from those books somehow justifies Defendant's attempt to enforce recoupment of the Signing Bonus despite being an illegal restraint of trade. (Docket #20, ¶¶ 73-74, 78).

## II. FACTS ALLEGED

2. Pursuant to the parties' written Agreement, Ginnane was an at-will employee. Specifically, the parties' agreement states as follows:

> **At-Will Employment**
> If you choose to accept this offer, please understand your employment is "at-will," voluntarily entered into and is for no specific period. As a result, you are free to resign any time, for any reason or for no reason. Similarly, Boys & Giles Clubs of San Antonio is free t conclude its at-will employment relationship with you at any time, with or without cause, and with or without prior notice.

3. Under the parties' employment Agreement, Ginnane received $32,500 as a Signing Bonus from Defendant. The Agreement also provided the following as to the Signing Bonus:

> If you leave Boys & Girls Clubs of San Antonio within 12 months of your start date, you will be responsible for reimbursing Boy & Girls Clubs of San Antonio for the entire signing bonus.

4. Ginnane moves to dismiss BGCSA's amended counterclaim because BGCSA's amended counterclaim fails to state a plausible claim for relief under Texas law.

## II. LEGAL STANDARD

5. To survive a motion to dismiss under 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

6. Texas state law governs BGCSA's breach of contract claim. As the Fifth Circuit has explained, "[u]nder *Erie*, federal courts apply state substantive law 'to any issue or claim which has its source in state law." *Camacho v. Texas Workforce Comm'n*, 445 F.3d 407, 409 (5th Cir.2006). While state law issues most frequently arise in diversity cases, it is a "frequently assumed, but erroneous, proposition that *Erie* applies only in diversity cases. The *Erie* case and the Supreme Court decisions following it apply in federal question cases as well." *Id*. at 409 n. 1 (citing Wright, Miller & Cooper, 19 *Fed. Prac. & Proc.* § 4520); *First S. Fed. Sav. & Loan Assoc. of Mobile, Ala. v. First S. Sav. and Loan Assoc. of Jackson County,*

*Miss.*, 614 F.2d 71, 73 (5th Cir.1980) ("The doctrine advanced in *Erie* ... often is spoken of as automatically applying in cases in which jurisdiction is based on diversity of citizenship. This view is erroneous, however. The *Erie* result applies to any issue 'governed by state law operating of its own force,' regardless of the jurisdictional basis."); *see also, e.g., Vess v.. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir.2003) ("*Erie* applies irrespective of whether the source of subject matter jurisdiction is diversity or federal question."); Wright, Miller & Cooper 19 *Fed. Prac. & Proc.* § 4520 ("It frequently is said that the doctrine of *Erie* ... applies only in diversity of citizenship cases; this statement simply is wrong.).

**III. ARGUMENT AND AUTHORITY**

7. BGCSA cannot state a cause of action for breach of contract because the contract it seeks to enforce constitutes an unlawful restraint of trade under Texas law.

8. Plaintiff was an at-will employee of BGCSA. The Supreme Court of Texas has discussed the importance of the at-will doctrine under Texas law:

> At-will employment is an important and long-standing doctrine in Texas. *Sawyer v. E.I. Du Pont de Nemours & Co.*, 430 S.W.3d 396, 402 (Tex. 2014). Under that doctrine, "absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Id.* at 399 (citation and internal quotation marks omitted). Because "a person's right to use his own labor in any lawful employment is ... one

> of the first and highest of civil rights," Texas has zealously guarded against any erosion of the at-will employment doctrine. *Marsh USA, Inc. v. Cook*, 354 S.W.3d 764, 776 (Tex. 2011) (citation and internal quotation marks omitted); *see Sawyer*, 430 S.W.3d at 399. Although an employer and employee may modify their at-will relationship by agreement, Texas courts have "insisted that the parties be definite in expressing their intent." *Sawyer*, 430 S.W.3d at 403.

*Rieves v. Buc-EE's LTD,* 532 S.W.3d 845, 850 (Tex App. [14 dist.] 2017)

9. The Texas Free Enterprise and Antitrust Act of 1983 states that "Every contract, combination, or conspiracy in restraint of trade or commerce is unlawful." Tex. Bus. & Com. Code Ann. § 15.058(a).

10. One Texas court, in a thorough and well-reasoned opinion, concluded that when an employment agreement contains a reimbursement provision similar to the one in Ginnane's Agreement, the reimbursement provision is an unlawful restraint of trade under Texas law and cannot be enforced.

11. In *Rieves v. Buc-EE's LTD,* 532 S.W.3d 845 (Tex App. [14 dist.] 2017) the appellate court reversed the trial court's verdict in favor of the employer who sued a former employee for reimbursement under the parties' employment contract for compensation previous paid to the employee. In *Rieves,* the employee signed an employment agreement which provided that she would receive Retention Pay and Additional Compensation along with a weekly salary. The employee's agreement further provided that the employee had to reimburse the employer for all Retention Pay and Additional Compensation paid if she did not work a minimum of 48 months

from the start of her agreement and give a minimum six months' written notice of separation. The employee's reimbursement was required whether she quit with or without cause or was terminated with or without cause. *Rieves*, 532 S.W.3d at 847-48.

12. The appellate court in *Rieves* concluded that covenants like the one in Ginnane's employment agreement are an illegal restraint of trade unless they fall under the Covenants Not to Compete Act.

> The Supreme Court of Texas has concluded that covenants limiting employees' professional mobility are unlawful restraints of trade under this statute unless they fall within the exception created by the Covenants Not to Compete Act. *Marat* 768, 770; *see also id.* at 782 (Willett, J., concurring in judgment). As the court explained, "[u]nreasonable limitations on employees' abilities to change employers ... could hinder legitimate competition between businesses and the mobility of skilled employees." *Id.* at 769. The Covenants Not to Compete Act provides that a covenant is enforceable only if (among other things) "it contains limitations as to time, geographic area, and scope of activity to be restrained that are reasonable and do not impose a greater ***851** restraint than is necessary to protect the goodwill or other business interest of the promisee." Tex. Bus. & Com. Code Ann. § 15.50(a); *see also DeSantis*, 793 S.W.2d at 681 (explaining similar standards of reasonableness that had to be met to enforce covenants at common law).[4]

*Rieves*, 532 S.W.3d *at 850-51.*

13. The *Rieves* decision explained further that a severe economic penalty imposed for leaving an employer would constitute an unreasonable covenant not to complete. In the instant case, the amended counterclaim seeks approximately 40%

of the money Ginnane earned while employed by GBCSA:

> Under supreme court precedent, these standards of reasonableness apply not only to provisions that expressly limit a former employee's professional mobility, but also to damages provisions that impose a severe economic penalty on a departing employee. *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 388 (Tex. 1991) (holding that "provisions clearly intended to restrict the right to render personal services are in restraint of trade and must be analyzed for the same standards of reasonableness as covenants not to compete to be enforceable," and applying standards to conclude that requiring employee to pay liquidated damages for furnishing services to clients of former employer was unreasonable); *Frankiewicz v. Nat'l Comp Assocs.*, 633 S.W.2d 505, 507 (Tex. 1982) (holding agreement that departing employee would forfeit vested renewal commissions in event of competition was unenforceable because it lacked reasonable limits on area and scope of activity). "The practical and economic reality" of such damages provisions is that they inhibit employee mobility in "virtually the same [manner] as a covenant not to compete." *Haass*, 818 S.W.2d at 385–86.

14. The *Rieves* court specifically held

> For these reasons, we hold that the Additional Compensation and Retention Pay provisions are unreasonable and therefore unenforceable. *See* Tex. Bus. & Com. Code Ann. § 15.50(a); *Haass*, 818 S.W.2d at 388; *Frankiewicz*, 633 S.W.2d at 507–08. Because they are unenforceable, the provisions cannot support Buc-ee's counterclaim against Rieves seeking the return of the Additional Compensation and Retention Pay she received during her employment

*Id. at 852.*

15. This Court, like the *Rieves* court, should find with regard to the parties' agreement that: (1) the repayment provision of the Signing Bonus is unreasonable and therefore unenforceable and (2) because the provision is unenforceable, it cannot

support BGCSA's amended counterclaim against Ginnane seeking return of the Signing Bonus she received during her employment.

17. Defendant' s amended counterclaim does nothing to counter the legal holding in *Rieves*. The contractual provision in the Agreement requiring Plaintiff to repay a signing bonus creates an illegal and unenforceable restraint of trade. Defendant's legally unsupported argument is that "As a non-profit, it was critical that Defendant mitigate its loss of the Signing Bonus. Defendant included, as a condition of its payment of the Signing Bonus, that the Plaintiff repay the Signing Bonus if Plaintiff's employment with Defendant ended prior to the one-year anniversary of her start date." (Docket #20, ¶76). This allegation does not address the restraint of trade standard. Furthermore, had the Defendant wanted to mitigate its losses as to the Signing Bonus, it could have spread the payment of the Signing Bonus over first year's pay periods. It chose instead to create golden handcuffs tying Ginnane to the Defendant for the twelve-month period and restraining her ability to leave Defendant's employ for other opportunities.

18. The other new allegation Defendant asserts in its Amended Counterclaim is that "Notably, the Signing Bonus is less than 17% of Plaintiff's $195,000.00 base salary and presumably far less of a percentage of Plaintiff's overall income when considering Plaintiff's income as a best-selling author." This allegation likewise does not exclude Defendant's counterclaim from the holding in

*Rieves*. The Agreement's provision requiring Ginnane to repay the Signing Bonus was *void ab initio*. *Associated Recovery v. Does*, No.3:16-CV-1025-L, 2018 WL 1517863 fn 11 *19 (N.D. Tex March 28, 2018) ("[V]oid ab initio" means "[n]ull from the beginning, as from the first moment when a contract is entered into. A contract is void ab initio if it seriously offends law or public policy, in contrast to a contract that is merely voidable at the election of one party to the contract." *quoting* Black's Law Dictionary 1805 (10th ed. 2009)). Thus, factors which may have arisen *after* the Agreement was signed, such as how much money Plaintiff may have earned, is irrelevant since the provision was void the moment the parties signed the Agreement.

16. Based on the foregoing, this Court should dismiss BGCSA's counterclaim ***with prejudice.*** This Court should not provide BGCSA an opportunity to amend its counterclaim again. Denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile. *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir.2003). An amendment is futile if it would fail to survive a Rule 12(b)(6) motion. *Id.* Because BGCSA's claim for repayment of the Signing Bonus cannot survive a Rule 12(b)(6) motion, any amendment would be futile.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff respectfully prays that the Court grant Plaintiff's Motion to Dismiss Defendant's Amended Counterclaim with Prejudice.

Respectfully submitted August 16, 2023.

**ROSS • SCALISE LAW GROUP**

____________________________________

**CHARLES L. SCALISE**
Texas Bar No. 24064621
Attorney-in-Charge
**DANIEL B. ROSS**
Texas Bar No. 00789810
1104 San Antonio Street
Austin, Texas 78701
(512) 474-7677 Telephone
(512) 474-5306 Facsimile
Charles@rosslawgroup.com
Attorneys for Plaintiff

## NOTICE OF ELECTRONIC FILING

The undersigned counsel hereby certifies that he has electronically submitted for filing a true and correct copy of the above and foregoing in accordance with the Electronic Case Files System of the Western District of Texas on the 16th day of August, 2023.

*/s/ Charles L. Scalise*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was duly served via ECF on this 16th day of August, 2023.

*/s/ Charles L. Scalise*